IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAWN TRAVIS,                    : Civ. No.  1:24-CV-2129
                                :
            Plaintiff,          :
                                :
    v.                          :
                                : (Chief Magistrate Judge Bloom)
FRANK BISIGNANO,                :
Commissioner of Social Security,[1] :
                                :
            Defendant.          :

## MEMORANDUM OPINION

## I.    Introduction

Dawn Travis filed a Title II application for a period of disability and disability insurance benefits on January 27, 2023.  Following an initial hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Travis was not disabled from her alleged onset date of disability of December 4, 2021, through February 9, 2024, the date of the ALJ's decision.[2]

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Frank Bisignano is substituted as the defendant in this suit.

[2] Tr. 10-18.

1

Travis now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'"[3] we conclude that substantial evidence supported the ALJ's findings in this case. Therefore, we will affirm the decision of the Commissioner denying this claim.

## II.    Statement of Facts and of the Case

On January 27, 2023, Travis applied for disability insurance benefits, citing a diagnosis of multiple sclerosis.[4] Travis was 28 years old at the time of the alleged onset of disability, had at least a high school education, and had past employment as a home aid.[5]

With respect to this alleged impairment the record revealed the following:

---

[3] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

[4] Tr. 184.

[5] Tr. 17.

Travis received an MRI on her brain in February of 2018 which showed, *inter alia*, "abnormal right optic nerve in the retrobulbar region intraorbital segment of the optic nerve consistent with optic neuritis," and "[w]hite matter changes suggest[ing] . . . multiple sclerosis with active plaque in the left par[i]etal lobe."[6]

In August of 2018, Travis visited Balhara Internal Medicine Associates for a follow-up on her multiple sclerosis and optic neuritis.[7] The treatment notes stated Travis was stable while doing monthly Tysabri infusions.[8] During this visit, Travis stated she felt great for the first two weeks with Tysabri but that it would wear off by the third week causing her to feel more tired and sleepy.[9] Travis further reported no pain, that her legs occasionally give out on her, and some difficulty forming sentences.[10]

---

[6] Tr. 1216-17.

[7] Tr. 888.

[8] Tr. 888-89.

[9] *Id.*

[10] *Id.*

In December of 2020, Travis appeared for a neurology follow-up with Dr. Khatuna Gurgenashvili due to increased symptoms of visual disturbance including "eye fluttering," blurriness, and an inability to focus.[11]  Travis further reported constant fatigue and some right lower extremity weakness.[12]  Dr. Gurgenashvili reported Travis' pupils were both reactive to light and that her sensation, motor function, and gait were all intact.[13]  It was recommended that Travis continue Tysabri infusions and update her MRIs,[14] which showed continued nonspecific mild cerebral white matter disease, potential demyelinating disease, and potential mild edema in the right optic nerve.[15]  Travis consistently underwent monthly Tysabri infusions from 2019 to 2023.[16]

---

[11] Tr. 1099.

[12] *Id.*

[13] Tr. 1100.

[14] Tr. 1099.

[15] Tr. 1097.

[16] Tr. 676, 1270.

In January of 2022, Travis was seen by Dr. Yogindara Balhara.[17] Travis reported inconsistent headaches along with flashing lights occurring on her right side lasting two to six hours.[18]  Travis reported no other pain, fatigue, weakness, balance problems, or loss of vision.[19]  Dr. Balhara diagnosed Travis with migraine headaches with aura and prescribed Maxalt.[20]

A month later, Travis reported worsening symptoms of visual difficulties and imbalance.[21]  She had difficulties with reading things in stores and reported falls.[22]  An examination revealed Travis was positive for visual disturbance, gait problem and weakness, but that her casual gait was normal.[23]  Updated MRIs were ordered,[24] which revealed no change from her previous brain MRI and mild change from her previous

---

[17] Tr. 309.

[18] *Id.*

[19] *Id.*

[20] Tr. 313.

[21] Tr. 1078.

[22] Tr. 1080-81.

[23] Tr. 1081.

[24] Tr. 1082.

cervical MRI in the form of minimal disc dehydration and a slight bulge at C5-6.[25]  The next month, Travis reported she felt much better, her vision problems were resolved, and that her balance and weakness had improved.[26]

In November of 2022, Travis reported increased symptoms of right arm numbness, worsening headaches, and fatigue due to lack of sleep.[27] In addition to her current regimen of infusions and Maxalt, she was prescribed amitriptyline for her headaches and sleep issues.[28]  That same month, Travis reported feeling good overall and that her prescribed medication improved the headaches.[29]  Travis' treatment notes indicate she was able to "carry out work of a light or sedentary nature, e.g., light house work, office work."[30]

---

[25] Tr. 283-85.

[26] Tr. 1058.

[27] Tr. 1052.

[28] Tr. 1055.

[29] Tr. 1199.

[30] Tr. 1200.

In March of 2023, Travis reported issues with her vision, balance, and depth perception.[31]  She further described her right eye as "pretty much shot" and that it is difficult for her to get in and out of the vehicle and on and off the couch or bed.[32]  Travis was referred to a neuro-ophthalmologist, Dr. Yagdish Shah, for an evaluation.[33]  Dr. Shah reviewed Travis' updated MRIs and conducted an examination.[34]  Dr. Shah noted the MRIs showed stable appearance and no active lesions.[35]  He further stated Travis' pupils reacted equally to light, she had full motor function in all extremities, normal gait and deep tendon reflexes, and that her coordination was normal.[36]  Accordingly, Dr. Shah observed that Travis' reported right-sided weakness "does not seem to be very apparent on exam."[37]

---

[31] Tr. 1044.

[32] *Id.*

[33] Tr. 1048

[34] Tr. 1170-72.

[35] Tr. 1171, 1173.

[36] Tr. 1171-72.

[37] Tr. 1172.

Dr. Shah started Travis on amantadine for her fatigue and ordered an EMG of the right upper and right lower extremity.[38]  The medication significantly helped her fatigue and the EMG came back normal.[39]  Dr. Shah noted she continued to report a subjective feeling of weakness of the right hand and that if she held something it would sometimes drop.[40] Travis and Dr. Shah had a lengthy discussion about switching from Tysabri infusions to Ocrevus infusions, which she began in October of 2023.[41]

It is against this factual backdrop that the ALJ conducted a hearing in Travis' case on November 20, 2023.[42]  Travis and a vocational expert ("VE") both testified at this hearing.  Travis testified about, *inter alia*, her inability to work due to multiple sclerosis, the recovery process of receiving her monthly infusion, what a good or bad day looks like

---

[38] Tr. 1173.

[39] *Id.*

[40] *Id.*

[41] Tr. 1173, 1270.  Because Travis' appeal focuses on the ALJ's treatment of evidence related to her physical impairments, we will forego discussion and analysis of Travis' mental health records and evaluations.

[42] Tr. 31-41.

regarding daily activities, her headaches and their frequency, and assistive devices used.[43]  The VE in his testimony first classified Travis' past work, then answered hypothetical questions about an individual with Travis' background and specific types of limitations.[44]

Following this hearing on November 20, 2023, the ALJ issued a decision denying Travis' application for benefits.[45]  In that decision, the ALJ first concluded that Travis met the insured status requirement through December 31, 2026.[46]  At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found Travis suffered from the following severe impairments: degenerative disc disease, multiple sclerosis, headaches, and obesity.[47]  At Step 3 the ALJ determined that Travis did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.[48]

---

[43] Tr. 34-38.

[44] Tr. 38-41.

[45] Tr. 10-18.

[46] Tr. 12.

[47] Tr. 12-14.

[48] Tr. 14.

Between Steps 3 and 4 the ALJ concluded that Travis retained the following residual functional capacity to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except she is limited to occasional postural movements, other than ladders, ropes, and scaffolds, which are limited to never. She is limited to frequent fingering/feeling with her right upper extremity, and should avoid concentrated exposure to temperature extremes/humidity/vibration/dangerous machinery/unprotected heights.[49]

In reaching this residual functional capacity ("RFC") determination, the ALJ made the following findings: the ALJ considered Travis' reported, subjective symptoms, and found that "claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"[50]    The ALJ also found that as for "statements about the intensity, persistence, and limiting effects of [] her symptoms, they are inconsistent because the claimant's treatment

---

[49] Tr. 14-17.

[50] Tr. 15.

records and the state agency opinions do not support the claimant is as limited as alleged."[51]  The ALJ then embarked on a review of the medical record evidence he found supported those findings.[52]

The ALJ next considered the medical opinions on record.  He was persuaded by the opinion of Dr. Ethel Hooper, who opined that Travis' strength was intact, she could not climb ladders, ropes, or scaffolds for safety reasons, and noted the impact of obesity on her functioning.[53]  The ALJ found this opinion was supported by and consistent with Travis' medical records.[54]  The ALJ also found the opinion of Dr. Jennie Brenenborg persuasive and "generally consistent" with Dr. Hooper's finding, except for Dr. Brenenborg's finding that Travis had no manipulative limitations.[55]  The ALJ explained that Dr. Hooper's finding that Travis can frequently finger and feel with her right upper extremity

---

[51] *Id.*

[52] Tr. 15-17.

[53] Tr. 16.

[54] *Id.*

[55] *Id.*

and has no limitations with her left upper extremity is more consistent with the record.[56]

The ALJ found the consultive examiner Dr. Kneifati unpersuasive.[57] Although Dr. Kneifati opined that Travis had a widened gait and short steps, could only lift up to ten pounds occasionally and could stand and walk for only three hours in an eight-hour work day,[58] the ALJ concluded that Dr. Kneifati's observations contradicted his proposed work-related limitations.[59] The ALJ reasoned that Dr. Kneifati examined Travis to have a normal stance, did not use an assistive device, could stand on her toes and heels and walk on the same with slight unsteadiness, could rise from a chair without difficulty, that her straight leg raises were negative, symmetric deep tendon reflex findings, mostly normal sensory function except for slight hypoethesia along the median

---

[56] *Id.*

[57] Tr. 17.

[58] Tr. 931, 934-35.

[59] Tr. 17, 930-39.

nerve distribution on her right hand to light touch, and full strength in all extremities.[60]

Ultimately, the ALJ concluded that Travis has a 20-pound lifting limitation, several postural and environmental limitations, and is limited to frequent fingering and feeling in her right upper extremity.[61] The ALJ then found at Step 4 that Travis could not perform her past work but, at Step 5, found that she could perform other occupations with jobs that existed in significant numbers in the national economy, such as a price marker, sorter, and office helper.[62] Having reached these conclusions, the ALJ determined that Travis had not met the demanding showing necessary to sustain this claim for benefits and denied this claim.

This appeal followed.[63] On appeal, Travis challenges the adequacy of the ALJ's decision arguing it is not supported by substantial evidence.[64] As discussed in greater detail below, having considered the

---

[60] Tr. 17, 931-33.

[61] Tr. 17.

[62] Tr. 17-18.

[63] Doc. 1.

[64] Doc. 14.

arguments of counsel and carefully reviewed the record, we conclude that the ALJ's decision should be affirmed, and this appeal denied.

III.  Discussion

A.  Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[65]  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[66]  Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla.[67]

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing

---

[65] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[66] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[67] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

evidence."[68]   However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[69]   The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence.[70]

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[71]   Under this standard, we must look to the existing administrative record to determine if there is "'sufficient

---

[68] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted).

[69] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[70] *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

[71] *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

evidence' to support the agency's factual determinations."[72]  Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law.[73]

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[74]  Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings.  In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must

---

[72] *Id.*

[73] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[74] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

articulate the reasons for his decision.[75]  This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements.[76]   Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[77]

## B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."[78]  This requires a claimant to show a severe physical or

---

[75] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).

[76] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).

[77] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

[78] 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a).

mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy."[79]  To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured.[80]

In making this determination, the ALJ follows a five-step evaluation.[81]  The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[82]

---

[79] 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).

[80] 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

[81] 20 C.F.R. §§404.1520(a), 416.920(a).

[82]20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[83]  In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[84]  Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence.[85]

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work.[86]  If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform

---

[83] *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).

[84] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

[85] *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

[86] *Mason*, 994 F.2d at 1064.

consistent with the claimant's RFC, age, education, and work experience.[87]

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."[88] Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[89]

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the

---

[87] 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

[88] *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013).

[89] *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence.[90]  These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination.  On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence.[91]    Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence.[92]

---

[90] *Biller*, 962 F. Supp. 2d at 778–79.

[91] *See Titterington*, 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15.

[92] *Burns,* 312 F.3d 113.

C. <u>Legal Benchmarks for the ALJ's Assessment of Medical Opinions</u>

The plaintiff filed this disability application in January of 2023 after Social Security Regulations regarding the consideration of medical opinion evidence were amended.  Prior to March of 2017, the regulations established a hierarchy of medical opinions, deeming treating sources to be the gold standard.  However, in March of 2017, the regulations governing the treatment of medical opinions were amended. Under the amended regulations, ALJs are to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion.[93]

Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision.  Supportability means "[t]he more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . .

---

[93] 20 C.F.R. § 404.1520c(c).

will be."[94]  The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources."[95]

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations."[96]  When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason."[97]  Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated.[98]  On the other hand, in cases where no medical opinion credibly supports the claimant's

---

[94] 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[95] 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

[96] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

[97] *Mason*, 994 F.2d at 1066

[98] *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[99]

**D. Standards Governing Step 3 of the Sequential Analysis**

At Step 3 of this sequential analysis, the ALJ is required to determine whether a claimant's impairments or combination of impairments are so severe that they are *per se* disabling, entitling the claimant to benefits. As part of this analysis, the ALJ must determine whether a claimant's alleged impairment is equivalent to one or more listed impairments, commonly referred to as listings, that are acknowledged to be so severe as to preclude the claimant from working.[100]

Thus, if a claimant's impairment meets or equals one of the listed impairments, the claimant is considered *per se* disabled and is awarded benefits.[101] The claimant bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar

---

[99] *Cummings*, 129 F. Supp. 3d at 214–15.

[100] 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, App. 1; *Burnett*, 220 F.3d 112, 119.

[101] 20 C.F.R. §416.920(d); *Burnett*, 220 F.3d at 119.

impairment."[102]   An impairment that meets or equals only some of the criteria for a listed impairment will not be sufficient.[103]

This Step 3 determination is a medical determination. Accordingly, the claimant must present medical evidence or a medical opinion showing that his or her impairment meets or equals a listing.  However, the ALJ is not required to accept a physician's opinion if the opinion is not supported by objective medical evidence.[104]  The ALJ is responsible for identifying the relevant listed impairments, given that it is it is "the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits."[105]

### E. Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms

When evaluating lay testimony regarding a claimant's reported degree of pain and disability, the ALJ must make credibility

---

[102] *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (citing 20 C.F.R. §416.920(d); SSR 83-19 at 91).

[103] *Id.*

[104] *See Schwartz v. Halter*, 134 F. Supp. 2d 640, 659 (E.D. Pa. 2001).

[105] *Burnett*, 220 F.3d at 120 n.2.

determinations.[106]  Our review of those determinations is deferential. *Id.*
However, it is incumbent upon the ALJ to "specifically identify and
explain what evidence he found not credible and why he found it not
credible."[107]  An ALJ should give great weight to a claimant's testimony
"only when it is supported by competent medical evidence."[108]  As the
Third Circuit has noted, while "statements of the individual concerning
his or her symptoms must be carefully considered, the ALJ is not required
to credit them."[109]

The Social Security Rulings and Regulations provide a framework
for evaluating the severity of a claimant's reported symptoms.[110]  Thus,
the ALJ must follow a two-step process: first, the ALJ must determine
whether a medically determinable impairment could cause the symptoms

---

[106] *See Diaz*, 577 F.3d at 506.

[107] *Zirnsak*, 777 F.3d at 612 (citations omitted).

[108] *McKean v. Colvin*, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015)
(citations omitted).

[109] *Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 363 (3d. Cir. 2011)
(referencing 20 C.F.R. §404.1529(a) ("statements about your pain or
other symptoms will not alone establish that you are disabled.").

[110] 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p.

alleged; and second, the ALJ must evaluate the alleged symptoms in light of the entire administrative record.[111]

Symptoms such as pain or fatigue will be considered to affect a claimant's ability to perform work activities only if medical signs or laboratory findings establish the presence of a medically determinable impairment that could reasonably be expected to produce the alleged symptoms.[112]  During the second step of this assessment, the ALJ must determine whether the claimant's statements regarding the intensity, persistence, or limiting effects of his or her symptoms are substantiated when considered in light of the entire case record.[113]  This includes, but is not limited to, medical signs and laboratory findings; diagnoses; medical opinions provided by treating or examining sources and other medical sources; and information regarding the claimant's symptoms and how they affect his or her ability to work.[114]

---

[111] SSR 16-3p.

[112] 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16-3p.

[113] 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16-3p.

[114] 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16-3p.

The Social Security Administration recognizes that individuals may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings.[115]  Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations set forth seven factors that may be relevant to the assessment of the claimant's alleged symptoms.[116] These factors include: the claimant's daily activities; the "location, duration, frequency, and intensity" of the claimant's pain or symptoms; the type, dosage, and effectiveness of medications; treatment other than medications; and other factors regarding the claimant's functional limitations.[117]

### F. This Case Will Be Affirmed.

Our review of the ALJ's decision denying an application for benefits is significantly deferential.  Our task is simply to determine whether the ALJ's decision is supported by substantial evidence in the record; that is

---

[115] SSR 16-3p.

[116] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

[117] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

"only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[118]    Judged against this deferential standard of review, we conclude that substantial evidence supported the ALJ's decision in this case.

Travis' first contention is that the ALJ failed to properly evaluate the opinion of Dr. Kneifati.   She claims that the ALJ's reasons for discounting Dr. Kneifati's opinion were "logically unsound" because his findings were consistent with other medical evidence.[119]   This argument is unavailing because it, in essence, amounts to a request that we reweigh the evidence, which we may not do.[120]   Here, the ALJ was confronted by several medical opinions, discussed each opinion considering the objective medical evidence, and found some more persuasive than others. The ALJ explained his reasoning for the persuasiveness afforded to each opinion which was all that he was required to do.[121]   Further, the ALJ's

---

[118] *Biestek*, 139 S. Ct. at 1154.

[119] Doc. 14 at 10.

[120] *See Chandler*, 667 F.3d at 359; *Zirnsak*, 777 F.3d at 611 ("[W]e must not substitute our own judgment for that of the fact finder.").

[121] *See Burnett*, 220 F.3d at 119.

treatment of Dr. Kneifati's opinion specifically cites to medical evidence that contradicts Dr. Kneifati's limitations in his opinion.[122]  Accordingly, we cannot conclude that the ALJ's treatment of Dr. Kneifati's opinion warrants a remand.

Travis' second contention is that substantial evidence does not support the ALJ's Step 3 analysis.  She claims that the ALJ did not properly consider Listing 11.02, which addresses the evaluation of headache disorders, in accordance with SSR 19-4p.[123]  Travis asserts reversible error occurred when the ALJ failed to explicitly examine the criteria under Listing 11.02B.[124]

There is no listed impairment for headache disorders.[125]  However, SSR 19-4p provides that a primary headache disorder may, "alone or in combination with another impairment(s), medically equal[] a listing."[126]

---

[122] Tr. 17, 930-33.

[123] Doc. 14 at 15.

[124] *Id.* at 18-19.

[125] *See Soc. Sec. Ruling 19-4p, Titles II & XVI: Evaluating Cases Involving Primary Headache Disorders*, 2019 WL 4169635, at *7 (S.S.A. Aug. 26, 2019) ("SSR 19-4p").

[126] *Id.*

This determination is made by comparing the signs and limitations of the primary headache disorder to epilepsy—"the most closely analogous impairment."[127] "While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and we may find that his or her [medically determinable impairment(s)] medically equals the listing."[128] "Thus, an ALJ should look to Listings 11.02B and 11.02D in assessing whether a claimant's migraine headache impairment medically equals a listing."[129]

While Travis challenges the ALJ's failure to discuss the specific criteria of Listing 11.02B, "that omission, standing alone, is not dispositive."[130] "[A]n ALJ need not specifically mention any of the listed impairments in order to make a judicially reviewable finding, provided

---

[127] *Id.*

[128] *Id.*

[129] *Tyson v. Kijakazi*, No. 1:21-CV-855, 2022 WL 3975002, at *10 (M.D. Pa. July 25, 2022), *report and recommendation adopted*, No. 1:21-CV-00855, 2022 WL 3971041 (M.D. Pa. Aug. 31, 2022).

[130] *See id.*

that the ALJ's decision clearly analyzes and evaluates the relevant medical evidence as it relates to the Listing requirements."[131]

To determine whether a headache disorder is equivalent to Listing 11.02B, an ALJ should consider the following criteria:

> A detailed description from an AMS [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).[132]

In discussing the claimant's alleged intensity, persistence, and limiting effects of her symptoms, the ALJ referred to medical reports that noted Travis had "improved headache control with amitriptyline at bedtime and Maxalt as need[ed]."[133]    He further recognized that

---

[131] *Scuderi v. Comm'r of Soc. Sec.*, 302 F. App'x 88, 90 (3d Cir. 2008).

[132] SSR 19-4p, 2019 WL 4169635, at *7.

[133] Tr. 15.

"although [Travis] reported a lot of headaches, Maxalt alleviated headaches in about fifteen minutes."[134]  Such medical evidence directly relates to the Listing 11.02B requirements.  As noted, an impairment that meets or equals only some of the criteria for a listed impairment will not be sufficient.[135]  Accordingly, the ALJ did not err in his Step 3 analysis.

Travis' third and final argument is that the ALJ erred in failing to address her need to lie down and nap during the day.  Travis asserts that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to conduct a function-by-function assessment regarding her need to nap during the day.[136]

SSR 96-8p explains that the ALJ's "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis" and that the "function-by-function assessment [must be] based upon all of the

---

[134] *Id.*

[135] *See Sullivan*, 493 U.S. at 531 (citing 20 C.F.R. §416.920(d); SSR 83-19 at 91).

[136] Doc. 14 at 20-21.

relevant evidence of an 'individual's ability to do work-related activities."[137]  However, an individualized "function-by-function" analysis on each work-related limitation is not required when an ALJ's RFC determination is supported by substantial evidence.[138]  All that is required is "an explanation of the substantial evidence upon which it relies."[139]

Here, the ALJ's treatment of Travis' symptoms of fatigue is supported by substantial evidence.  The ALJ discussed the objective medical evidence, as well as Travis' testimony concerning the same.  However, the ALJ concluded Travis' fatigue allegations were not entirely credible or supported by the medical evidence.  Notably, as the ALJ

---

[137] *Soc. Sec. Ruling 96-8p, Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 362207, at *34475–76 (S.S.A. July 2, 1996) ("SSR 96-8p").

[138] *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 149 n.5 (3d Cir. 2007) (finding the ALJ did not err in failing to follow a function-by-function analysis of the claimant's limitations because the RFC assessment was supported by substantial evidence); *Brooks v. Saul*, No. CV 19-2855, 2019 WL 7048794, at *7 (E.D. Pa. Dec. 23, 2019) ("SSR 96-8p does not require the ALJ perform a "function-by-function" analysis of each and every work-related activity.")

[139] *Brooks*, 2019 WL 7048794, at *7.

mentioned, Travis testified that she gets very sleepy after her infusions and that she is fatigued. However, records indicated that Travis reported no side effects from her infusions, no weakness or fatigue, and that her symptoms improved with treatment. The ALJ further considered June 2023 records, which demonstrated that Travis' fatigue was significantly improved after taking a new medication. Ultimately, the ALJ did not find Travis' testimony to be consistent with the objective medical evidence. Thus, we find this argument unavailing and conclude that the ALJ's assessment was adequately explained, and as such, supported by substantial evidence.

Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we conclude that substantial evidence supported the ALJ's evaluation of this case, and this decision should be affirmed.

## IV.  Conclusion

For the foregoing reasons, the decision of the Commissioner in this case will be AFFIRMED, and the plaintiff's appeal denied.

An appropriate order follows.

Submitted this 9th day of December 2025.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge